**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Case No.: 2:24-cr-00157**

**JASON ALLEN RHULE**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition. (ECF No. 33). Pending before the undersigned is defendant's *Motion for Revocation of Detention Order and for Reconsideration for Bond.* (ECF No. 25). After careful consideration of the parties' positions; the evidence adduced at the initial detention hearing and subsequent January 30, 2025 evidentiary hearing; the Pretrial Services Report; and the home assessment completed by the United States Probation Office ("USPO"), the undersigned respectfully recommends that the Defendant's motion be **DENIED**.

## I.  BACKGROUND

A September 17, 2024 Indictment in this matter charged the Defendant with knowingly possessing two loaded firearms on or about July 24, 2024, while knowingly having been convicted of crimes punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8). (ECF

No. 1). Subsequently on November 25, 2024, the United States filed a *Motion for Detention Hearing*. (ECF No. 6). Therein, the United States requested leave to hold a detention hearing pursuant to 18 U.S.C. § 3142(f), on the grounds that this case involves possession or use of a firearm under 18 U.S.C. § 3142(f)(1)(E). (ECF No. 6). The United States argued that the Court should detain defendant because this case involves the possession of a firearm, and that no conditions of release will reasonably assure defendant's appearance as required, or the safety of any other person and the community. *Id.* at 2.

The USPO filed a pretrial services report on November 27, 2024. (ECF No. 13). Therein, it was noted that, *inter alia*, "the defendant has had violations of parole" as well as "a history of domestic battery and domestic violence, which shows a propensity for violence." *Id.* at 9. The USPO found that "the defendant poses a risk of nonappearance," and further assessed the defendant "as a risk of danger to the community." *Id.* Accordingly, the USPO recommended the defendant be detained on the grounds that "[t]here is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community." *Id.*

On December 2, 2024, the undersigned held an arraignment and detention hearing in this matter, where defendant was represented by his appointed counsel, David R. Bungard. (*See* ECF No. 32). Upon arraignment, defendant pleaded not guilty to the charges contained in the Indictment. *Id.* at 4. Next, the Court permitted the parties to address whether there were any additions or corrections that needed to be made to the pretrial services report. *Id.* at 5.

The United States asserted that it did not have any additions or corrections to the pretrial services report. *Id.* However, defense counsel represented that the 2006 domestic

violence petitions contained in the Pretrial Services Report were dismissed. *Id.* Additionally, defense counsel represented that the August 30, 2019 parole violation contained in the Pretrial Services Report was based upon a charge for attempted manufacture of a controlled substance; according to defense counsel, however, while defendant "pled to" the charge, "it involved basically four marijuana plants," and the defendant has since "discharged parole on that sentence." *Id.* at 7. With respect to the conviction for attempt to commit a felony in Kanawha County in 2021, defense counsel represented that defendant's bond was revoked because he left a substance abuse treatment program. *Id.* at 8. Defense counsel added that defendant has served his sentence and "completed parole for that as well." *Id.* Lastly, with respect to the dismissed charge for possession of a firearm and ammunition, defense counsel represented that all of those charges were dismissed; further, defense counsel represented that the firearm in question "was actually a non-operable firearm that was attached to a piece of wood as artwork, and that the shells . . . were spent shells that had been collected for purposes of recycling, not anything that could be used as ammunition. *Id.* at 8-9. In response, the undersigned directed the USPO to make note of defense counsel's remarks and to make any necessary corrections to the pretrial services report. *Id.* at 9.

Next, the undersigned took up the matter of detention. *Id.* Counsel for the United States addressed the Court first, with a proffer concerning its reasons for filing a motion to detain. The United States noted that defendant's charge of being a felon in possession of a firearm is "a dangerous offense in and of itself." *Id.* at 10. Further, the United States argued that the evidence against the defendant is strong in this case, because the defendant had the firearms at issue "in his bedroom," and was found with one of them "in his bed where he was sitting during a parole compliance check." *Id.* Additionally, the

United States asserted that the defendant "has a history of violence directed at his domestic partners," with "three prior arrests for domestic battery, most recently in November of 2022" though "those charges ended up being dismissed." *Id.* Emergency protective orders were granted in response to two domestic violence petitions filed against the defendant in 2006, although those petitions were ultimately denied. *Id.* According to the United States, defendant's "criminal behavior has escalated in recent years," with a felony conviction in 2018 and a criminal history dating back to 2006—with prior felony convictions for grand larceny, attempted manufacture of a controlled substance, and attempted grand larceny. *Id.* at 10-11.

The United States also argued that detention was proper because "the defendant has shown a repeated failure to comply with conditions of his release." (ECF No. 32 at 11). According to the United States, the defendant was on parole when he allegedly committed the charged offense at issue in the instant criminal action; further, the terms and conditions of the defendant's parole prohibited him from possessing firearms. *Id.* The United States argued that defendant was aware that possession of a firearm was a violation of the terms and conditions of his parole "because he signed a form" expressly acknowledging this condition. *Id.*

The United States argued that, In addition to the charged offense, in November of 2022, the defendant was out on bond "on grand larceny and burglary charges and his bond was revoked shortly after he was charged with domestic battery, and a warrant was issued for his arrest." *Id.* One month later in December of 2022, "the police were attempting to execute the warrant and the defendant was found in a bedroom with a sawed-off shotgun and body armor." *Id.* Further, "despite [defense counsel's] assertion that the gun was an art piece," the United States noted that "the circumstances . . . are

similar to this offense[.]" *Id.* Additionally, the United States asserted that in August of 2019, the defendant "violated his parole and was arrested for growing marijuana plants and eventually convicted of attempted manufacture of a controlled substance as a result[.]" *Id.* at 11-12. According to the United States, the defendant was also "on parole for both the drug charge and the attempted grand larceny charge at the time that the offense charged in this federal indictment" was allegedly committed. *Id.* at 12. Finally, the United States asserted that the defendant's driver's license "has also been suspended five times for failure to respond to charges and suspended an additional four times for failure to pay fines and court costs that were imposed after convictions." *Id.* at 12. Based upon these factors, the United States argued that detention was necessary "because there is no condition or combination of conditions sufficient to guarantee his release and public safety." *Id.*

In response, the defendant presented two witnesses. First, defense counsel called Greg Nicolson. *Id.* at 13. Mr. Nicolson testified that he resides in a five-bedroom home in South Charleston, West Virginia, with his fiancée, Joyce Spiroff, his fiancée's daughter, Taylor Edwards, and, at times, two of his fiancée's granddaughters, ages eleven and eighteen. *Id.* at 14, 16. Additionally, Ms. Spiroff's brother-in-law, Joseph Costello, was temporarily residing with them after undergoing two hip surgeries. *Id.* at 14. Mr. Nicolson testified that Ms. Edwards was in a relationship with the defendant. *Id.* Mr. Nicolson testified that he is seventy-three years old, and that he has a neuromuscular disease known as inclusion body myositis, requiring him to use a power chair for mobility. *Id.* at 16. Mr. Nicolson testified that he knows the defendant's family through the defendant's younger brother, TJ. *Id.* According to Mr. Nicolson, the defendant has provided assistance in the past with moving furniture and clearing up after a storm. *Id.* at 17. Mr. Nicolson

testified that he was aware that the defendant "has prior felony convictions," but was still willing to allow the defendant to live in his home. *Id.* He stated that he has a lot of work around the house that defendant could help him with. *See id.* He testified that he assumed the defendant would stay in Ms. Edward's bedroom. *Id.* at 21.

Mr. Nicolson also testified that he had some firearms in his house. *Id.* at 18. First, he kept an Ithaca shotgun upstairs in a closet; however, he testified that he removed it from the home as of the date of the hearing. *Id.* He took it to his son's house for safekeeping. *Id.* at 22. Additionally, he testified that there are some guns remaining in a safe that is anchored to the floor in his basement. *Id.* at 18-19. According to Mr. Nicolson, there are four firearms—two black powder guns built from a kit, a shotgun, and a Savage rifle—as well as two antique handguns in the safe. *Id.* at 22-23. He testified that he lost the combination to the safe, but that he would make arrangements with a locksmith to have the firearms removed from the home. *Id.* at 18-19. He testified that he understood one of the conditions for bond release is that there cannot be any firearms in the house. *Id.* at 20.

Next, defense counsel called Ms. Edwards to testify. *Id.* at 24. Ms. Edwards testified that her family moved into Ms. Nicolson's home after a storm damaged the house her family was renting. *Id.* at 25. Ms. Edwards testified that she has known the defendant since 2017, and that the two have been in a relationship since 2020. *Id.* They broke up at one point, but got back together in November of 2022. *Id.* at 30. Ms. Edwards was dating the defendant in July 2024, the time of the alleged charged offense. *Id.* She is aware of the defendant's past criminal conduct, but is still willing to let him stay with her in the same bedroom at Mr. Nicolson's house. *Id.* at 28. Additionally, she testified she was able to transport the defendant to and from court appearances. *Id.* Ms. Edwards is enrolled in

6

school and anticipates graduating with a degree in cyber security in 2025; she testified that she goes to school five days per week, between 2:00 p.m. and 7:00 p.m. *Id.* She testified that she is willing to serve as a third-party custodian for the defendant, and understands that in such a role she would be responsible for ensuring that he abided by all of the terms and conditions of is bond. *Id.* at 29. She testified that she would contact the probation office to make a report if she saw him violating the terms of release. *Id.* Ms. Edwards testified that she does have a criminal history. *Id.* at 31. She has a felony conviction for attempted forgery. *Id.*

After the witnesses testified, the parties' counsel presented arguments on the issue of detention. The United States argued that Ms. Edwards is not an appropriate third-party custodian for the defendant, because there is not sufficient room in the home, there are firearms in the home, and because the defendant would have nowhere to go if he and Ms. Edwards were to break up again. *Id.* at 32. In response, defense counsel argued that "this appears to be a simple possession case without any other aggravating factors involved with it" because there are no allegations that the defendant "had this weapon in his hands committing a crime of violence or a drug offense against another individual," nor are there any allegations "that he carried these weapons outside the house [or] . . . threatened anyone with them[.]" *Id.* at 33. Defense counsel pointed out that the defendant has past work at the painters' union as well as past construction-work experience, and could find work if released on bond. *Id.* at 33-34. Additionally, defense counsel argued that the defendant could more easily receive orthopedic treatment for a shoulder impairment if released. *Id.* at 34. Turning to the defendant's criminal history, defense counsel argued that most of the offenses "are property-related offenses," and that the domestic-assault charges were dismissed and occurred approximately eighteen years ago. *Id.* at 35. He also

argued that the defendant could be helpful to the disabled family members and neighbors in his life. *Id.* Finally, with respect to the firearms in Mr. Nicolson's home, defense counsel pointed out that Mr. Nicolson stood prepared to remove the firearms from the home. *Id.* at 36. Accordingly, defense counsel asked that the Court consider releasing the defendant on bond with the standard conditions "and any additional conditions that the Court wants to impose with respect to those firearms that are stuck in that safe right now." *Id.* at 37.

Upon consideration of the record, including the proffers of counsel and the testimony of the witnesses, the recommendation and the review of the pretrial services report presented by the USPO, as well as the factors set forth in 18 U.S.C. § 3142(g), the undersigned set forth factual findings on the record. (ECF No. 32 at 38-41). The undersigned found that the defendant is charged in this indictment with being a felon in possession of a firearm. *Id.* at 38. In looking at the defendant's history, he is forty-four years of age and resided with his mother in Charleston, West Virginia, where he had lived for approximately two-and-a-half years, and has resided in the Southern District of West Virginia for most of his life. *Id.* He is currently in an on-again, off-again relationship with Ms. Edwards, and wishes to reside with Ms. Edwards, Ms. Edwards's two daughters, Ms. Edward's mother, Joyce Spiroff, and the fiancé of Ms. Edwards's mother, Mr. Nicolson, who is the owner of the residence. *Id.* Mr. Nicolson owns several firearms, most of which are reported as antique firearms that are located in a locked safe in the basement of the residence. *Id.* at 38-39. Mr. Nicolson is willing to remove the firearms if the defendant is released to his residence, but as of the date of the hearing, the weapons were still in the safe located in Mr. Nicolson's residence. *Id.* at 39.

The undersigned also took note that Mr. Nicolson has lost the safe combination, and indicated there have not been any arrangements made to have the safe opened so the

firearms could be removed. *Id.* The undersigned found it a "major concern" that the safe containing the firearms was still in the house, with no arrangements made to remove them as of the date of the hearing. *Id.* Further, while defense counsel expressed his belief that the defendant should be able to get a job, the undersigned noted that it appears the defendant has been unemployed since July 2024, and is presently unemployed with no job lined up. *Id.* The defendant has no assets, no liabilities, and no monthly income or expenses. *Id.*

The undersigned also explained that the defendant's criminal history is of some concern. *Id.* at 39. In 2006, the defendant pleaded guilty to misdemeanor possession of a controlled substance without a valid prescription in the Magistrate Court of Monongalia County, West Virginia; in 2014, he pleaded guilty to misdemeanor possession of a controlled substance of less than fifteen grams in the Magistrate Court of Kanawha County, West Virginia; in 2018, he pleaded guilty to grand larceny—a felony—in the Circuit Court of Putnam County, West Virginia, and subsequently violated his parole on this conviction; in 2022, he pleaded guilty to attempted manufacture of a controlled substance—a felony—in the Circuit Court of Putnam County, West Virginia; and in 2023, he pleaded guilty to attempt to commit a felony, grand larceny, in the Circuit Court of Kanawha County, West Virginia. *Id.* at 39-40. He has a history of receiving various traffic violations and receiving citations or pleading guilty or no contest and failing to pay fines or failing to respond to various citations, and a history of being charged with domestic battery and domestic violence. *Id.* at 40.

Lastly, the undersigned expressed particular concern about releasing the defendant to the proposed residence, for a number of reasons. *Id.* at 40-41. Initially, the testimony showed there were a number of firearms located in a locked safe, for which the

owner lost the combination. *Id.* at 40. While Mr. Nicolson testified he stood ready to hire a locksmith and remove the firearms, that had not been done as of the date of the hearing. *Id.* The undersigned further noted that a home assessment had not been made by probation, and as such it remained unclear whether the home would be an appropriate residence for release. *Id.* at 41. Likewise, due to Ms. Edwards' testimony that she has a felony conviction, the undersigned expressed concern as to whether she would be an appropriate third-party custodian. *Id.*

Accordingly, based on the foregoing, the undersigned found by a preponderance of the evidence that the defendant "does pose a risk of non-appearance," and further found by clear and convincing evidence that this defendant "poses a danger to others in the community." *Id.* The undersigned thus ordered the defendant to be detained and remanded to the custody of the United States Marshal until further proceedings in this matter. *Id.* The undersigned then entered orders of detention pending trial, explaining the reasons for detention. (ECF Nos. 18; 20).

Subsequently on December 16, 2024, defense counsel filed *Defendant's Motion for Revocation of Magistrate Judge Tinsley's Detention Order and for Reconsideration for Bond.* (ECF No. 25). Therein, Defendant requests that the Court enter an order releasing him from custody "and placing him on the standard $10,000 unsecured personal recognizance bond with any additional special conditions that this Court considers to be necessary." *Id.* at 1. Defendant seeks de novo review from the presiding District Judge, "revok[ing] [the] magistrate judge's pretrial detention order . . . and mak[ing] an independent determination of the proper pretrial detention or conditions of release." *Id.* at 6 (citing *United States v. Stewart*, 19 Fed. App'x 46 (4th Cir. 2001)).

In support of his motion, Defendant "incorporate[d] the same factors presented to Magistrate Judge Tinsley at the December 2, 2024, detention hearing in support of a determination that the defendant is a suitable candidate for bond as there are reasonable conditions which could be imposed that would assure the safety of the community and his appearance for future court proceedings." (ECF No. 25 at 6). Additionally, defense counsel noted that, since the December 2, 2024 detention hearing, Ms. Edwards has reported to him "that a locksmith opened the safe in the basement and that the four firearms and quantities of ammunition have been removed from the residence." *Id.* Further, "Joyce Spiroff, the mother of Taylor Edwards, has advised counsel that she would be willing to serve" as the third-party custodian. *Id.*

On January 7, 2025, the presiding District Judge entered an *Order* stating that, in light of the defendant's subject motion, and because "new evidence has arisen since the initial hearing," the motion would be referred to the undersigned "to hear and determine or make recommendations for disposition . . . including conducting a hearing on the motion, if necessary, and entering into the record a written order setting forth the disposition of the motion or recommendation for disposition." (ECF No. 33).

The USPO performed a home assessment of the Nicolson home in South Charleston, West Virginia, on January 16, 2025. U.S. Probation Officer Shamika Wade reported that *two* safes were located in the basement. The safe that formed the subject of the previous detention hearing was opened, and Ms. Wade reported that the firearms had been removed. As for the second safe, Mr. Nicolson stated to Ms. Wade that he was unable to open it because he did not have the combination or a key. According to Mr. Nicolson, the safe contains jewelry or personal items of his parents; he does not believe that it contains any weapons. Ms. Wade concluded that the proposed residence is not suitable

11

for the defendant. Ms. Wade explained that, if released on bond, the defendant would be residing with his significant other, Ms. Edwards, who is a convicted felon and who is on bond for a pending matter in the Circuit Court of Kanawha County, West Virginia, in which she has been charged with grand larceny. Furthermore, Ms. Wade stated that she continues to assess the defendant as a risk of nonappearance and danger to the community based on the nature of the alleged offense and the defendant's prior felony convictions and violations of parole. Ms. Wade therefore recommended that the defendant continue to be detained.

In accordance with the presiding District Judge's order of referral, the undersigned held a second detention hearing on January 30, 2025. (ECF No. 37). At the hearing, the defendant called Ms. Edward's mother, Joyce Spiroff, to testify. Ms. Spiroff testified that she is willing to serve as the third-party custodian for the defendant should he be granted release on bond. She testified that she is retired from her employment with the West Virginia Department of Health and Human Services. She resides with her fiancée, Greg Nicolson, at the subject home in South Charleston, West Virginia. Ms. Spiroff testified that Mr. Nicolson is disabled and that she is involved in his daily care. She further testified that her daughter, Ms. Edwards, moved out of the home into an apartment approximately one week before the hearing. Ms. Spiroff's grandchildren also moved out, and her brother-in-law passed away since the previous hearing. As a result, the only people living in the home should the defendant be released on bond would be Mr. Nicolson, Ms. Spiroff, and the defendant. Ms. Spiroff testified that she has known the defendant since about 2017, and became acquainted with him due to his relationship with her daughter. Ms. Spiroff testified that the defendant has provided help around the house, including lawn care and handyman work, in the past. However, she does not have a relationship or connection

12

with the defendant; rather, her daughter is "friends" with him, and has been in a relationship with him in the past. She testified that her daughter, Ms. Edwards, met the defendant while at a sober-living facility. With respect to the home, Ms. Spiroff testified that the safe in the basement has been "dealt with." A locksmith was able to open it and remove the firearms contained therein. According to Ms. Spiroff, as of the date of the hearing, there were no firearms or other weapons in the home. Ms. Spiroff testified that she is aware of the defendant's prior criminal history, that she is willing to provide transportation to the defendant, and that she successfully transported the defendant to a funeral recently and returned him to the jail as required.

After the witnesses testified, the parties' counsel presented arguments on the issue of the defendants' continued detention. The defendant's counsel argued that the conditions that were previously concerning to the Court have been eliminated. Namely, the safe in the basement has been addressed; Ms. Edwards has removed herself from the home and now resides in an apartment; and the home is far less crowded than at the time of the first hearing. Defense counsel further emphasized that the defendant's prior convictions were property-related, and did not involve violence. He acknowledged the prior domestic-violence charges, but emphasized that those charges were ultimately dismissed. In response, the United States argued that the defendant does have a history of violence, including a 2022 domestic incident where a woman was hospitalized. In addition, the United States emphasized the allegation that the defendant was found to be in possession of a firearm on his bed while on parole. In light of the defendant's prior criminal history as well as his "long history" of non-compliance with the terms of parole, the United States argued that the defendant has continually shown he cannot comply with the terms of release. Following the hearing, the undersigned took this matter under

advisement and ordered that the defendant be detained and remanded to the custody of the U.S. Marshal.

## II.    <u>LEGAL STANDARD</u>

Pursuant to 18 U.S.C. § 3145(b), district courts have jurisdiction to review a detention order imposed by a United States Magistrate Judge. This statute permits review by a district judge of a detention order entered by a magistrate judge if the person files a motion for revocation or amendment of the order. *Id.* When a district court reviews the findings of a magistrate judge with respect to pretrial detention, it must engage in de novo review of the contested order and must make an independent determination of the proper pretrial detention or conditions of release. *United States v. Stewart*, 19 Fed. App'x 46, 48 (4th Cir. 2001) (unpublished). Review of a magistrate judge's detention order is to be "determined promptly." *Id.*

The United States sought detention on the eligibility grounds that this case involves the possession of a firearm pursuant to 18 U.S.C. § 3142(f)(1)(E). (*See* ECF No. 6). As this Court has explained, under such circumstances detention shall be ordered if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Cooper*, 2:20-cr-199, 2020 WL 6868790, at *2 (S.D. W. Va. Nov. 23, 2020) (citing 18 U.S.C. § 3142(e)(1)). In making such a finding, the Court must consider the following four factors:

(1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)    the weight of the evidence against the person;

(3)     the history and characteristics of the person, including—

    (A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal State, or local law; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III.    DISCUSSION

The new evidence introduced at the January 31, 2025 detention hearing does not alter the application of the § 3142(g) factors. Continued detention pending trial is appropriate because no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e)(1).

### A.    Nature and Circumstance of the Offense Charged

The first factor—the nature and circumstance of the offense charged—supports detention because the defendant is charged with knowingly and unlawfully possessing two loaded firearms—a pistol and a rifle—despite being a convicted felon. (ECF No. 1). The statute, addressing detention, explicitly states that a court should consider "whether the offense . . . involves a . . . firearm." 18 U.S.C. § 3142(g)(1). The nature of the charged offense indicates that the defendant could pose a risk to the community. Defendant's alleged possession of firearms despite knowing—because of his prior felony convictions and because of the terms of his parole—that he was not legally permitted to do so,

illustrates a disregard for the law. The proximity of the weapons to the defendant's person, along with their location on his bed and amidst loaded firearm magazines, indicates dangerous behavior. As such, this first factor supports the undersigned's prior findings that the defendant presents a risk of non-appearance and a risk to public safety.

### B.    Weight of the Evidence

The second factor—the weight of the evidence—also supports detention. 18 U.S.C. § 3142(g)(2). The United States submitted evidence that the firearms of which the defendant is charged with being in possession were found in his bedroom in the open, and one of them was found on the bed where the defendant had been sitting when the parole officers first encountered him. (*See* ECF No. 25 at 1-3). Further, the defendant admitted to his unlawful conduct in a recorded interview. *See id*. The strength of this evidence supports the undersigned's prior determination that the defendant should be detained pending trial on the offense.

### C.    History and Characteristics of the Defendant

The third factor—the history and characteristics of the defendant—likewise supports detention. 18 U.S.C. § 3142(g)(3). The best indicator of how a person or defendant will behave if he or she were to be released, is how he or she behaved when released in the past. This defendant's track record is "a poor one." Notably, the circumstances of the charged offense in this case are markedly similar to the charges the defendant faced in December 2022. As summarized in the pretrial services report, on November 29, 2022, law enforcement went to the home of the defendant's mother—the same place the defendant was living during the relevant time period in this case—because the defendant had multiple active arrest warrants. (*See* ECF No. 13 at 8). The defendant's

mother consented to a search, and the officers found body armor, a sawed-off shotgun, and numerous rounds of ammunition in the defendant's bedroom. *See id.*

In addition to Defendant's December 2022 arrest and his charged conduct in this case, there are numerous other instances of the defendant's failure to comply with the conditions of release. After his June 2021 arrest on burglary and grand larceny charges, the defendant's pretrial bond was revoked when he was charged with committing new criminal conduct—domestic battery. *Id.* at 7. The charged conduct was particularly violent, as the victim was found bleeding from her head and stated that the defendant "had picked her up and slammed her on the ground multiple times after a verbal altercation" which "caused her to hit her head multiple times." *Id.* at 8. The victim was transported to a nearby hospital for medical treatment due to the alleged injuries. *See id.* After his 2018 conviction for grand larceny, the defendant was paroled in March 2019; less than six months later, he was found to have violated his parole. *Id.* at 6-7. Further, the defendant's driver's license has been suspended at least nine times as a result of his failure to respond to charges or to pay court-imposed fines and court costs. *See id.* at 4-7. Given these facts, the defendant's prior encounters with the justice system indicates that the defendant will not comply with the terms of his release, and further indicates that the defendant poses a risk of nonappearance.

### D.    **Nature and Seriousness of Danger to Others**

The fourth factor—the nature and seriousness of the danger to any person or the community that would be posed by the person's release—also supports detention. 18 U.S.C. § 3142(g)(4). Defendant's past criminal conduct, considered in combination with the circumstances of the offense with which he is now charged, demonstrate a lack of respect for authority and the rule of law. The defendant appears intent on continuing to

obtain deadly weapons despite knowing he is not permitted to possess a firearm. The United States's proffer indicates that the defendant obtained the pistol in the indictment in this case because an ex-girlfriend effectively straw-purchased it for him. (*See* ECF No. 27 at 7). Likewise, the United States's proffer indicates that the defendant traded a chainsaw for the assault-style rifle. *See id.* Moreover, when previously given the opportunity for pretrial bond or parole, the defendant has not stopped his illegal behavior and has been charged with new offenses multiple times. His continued failure to conform his actions to the law is a clear threat to public safety. Moreover, while defense counsel downplayed the defendant's domestic-violence charges as outdated and having occurred over eighteen years ago, he sidestepped the recent 2022 incident where an ex-girlfriend was hospitalized and reported to police that she sustained head injuries at the hands of the defendant.

None of the evidence introduced by the defendant after the undersigned's entry of the detention order alters these findings. While the undersigned certainly credits Ms. Spiroff's testimony, and she is no doubt well-intentioned, the mere fact that she is willing to serve as a third-party custodian does not mean that she, or anyone else, could adequately supervise the defendant. *United States v. Snow*, 21-cr-385-14, 2022 WL 267367, at *1-10 (W.D. Pa. Jan. 28, 2022) ("[T]he mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case."). Ms. Spiroff testified that her connection with the defendant is through her daughter, who was romantically involved with the defendant. Most notably, Ms. Spiroff and her daughter, Ms. Edwards, revealed through their testimony that at the time of the December 2, 2024

hearing, Ms. Spiroff was allowing her daughter—who is admittedly a convicted felon—to reside in a house in which she knew that firearms were stored. Ms. Spiroff's removal of the firearms from the home only after it became an issue before this Court supports a finding that she is not a suitable third-party custodian for the defendant. Moreover, the undersigned finds it concerning that, based upon the report of the USPO, there is another safe at the residence, the contents of which are not clearly known. And at bottom, it is extremely unlikely that a new residence or a third-party custodian would remedy the defendant's longstanding disregard for the rule of law. Many courts, including those within the Fourth Circuit, have recognized that strict conditions of release, including home confinement and electronic monitoring cannot guarantee that a defendant will no longer engage in criminal activity. *See United States v. Tucker*, 1:17-cr-221, 2020 WL 3618983, at *6–7 (M.D.N.C. July 2, 2020) (explaining that the court had "no reason to believe that he would suddenly become compliant now" after being unable or unwilling to remain law-abiding).

In short, the defendant failed to demonstrate that the conditions that were previously concerning to the Court have been eliminated. The evidence adduced at the January 31, 2025 evidentiary hearing does not disturb the undersigned's prior finding that no condition or combination of conditions could secure defendant's appearance, or the safety of the public.

## IV.   <u>RECOMMENDATION</u>

Accordingly, in light of the foregoing, it is respectfully **RECOMMENDED** that defendant's *Motion for Revocation of Detention Order and for Reconsideration for Bond* (ECF No. 25) be **DENIED**.

This Proposed Findings and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1). The parties should consult the statute and Rule 59(b) of the Federal Rules of Criminal Procedure concerning the right to appeal to the presiding District Judge. Any objection must be filed within **fourteen days** of the entry of this Proposed Findings and Recommendation. Failure to object pursuant to Rule 59(b) waives a party's right to review. Upon expiration of the fourteen-day period, this matter will be submitted to Judge Johnston for his consideration.

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy to all counsel of record and any unrepresented party.

ENTERED:    February 6, 2025

Dwane L. Tinsley
United States Magistrate Judge